

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-09-294-CR

RONALD SCOTT SBRIGLIA                                              APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

------------

## FROM COUNTY COURT AT LAW NO. 1 OF PARKER COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I. Introduction

Appellant Ronald Scott Sbriglia pleaded guilty to driving while intoxicated.[2]
Pursuant to a plea bargain, the trial court sentenced Appellant to sixty days'
confinement. In his sole issue, Appellant contends the trial court erred by denying

---

[1] *See* Tex. R. App. P. 47.4.

[2] *See* Tex. Penal Code Ann. § 49.09 (Vernon Supp. 2009).

his motion to suppress because there was no reasonable suspicion or probable cause to stop Appellant's vehicle. We affirm.

## II. Procedural Background

Appellant was arrested on June 22, 2008, for driving while intoxicated. He filed a motion to suppress, and the trial court conducted a suppression hearing on November 5, 2008. The parties stipulated on the record that the issue for the trial court at the suppression hearing was whether the arresting officer had reasonable suspicion or probable cause to justify the initial stop of Appellant's vehicle. The trial court denied Appellant's motion to suppress at the conclusion of the hearing and subsequently signed findings of fact and conclusions of law in which the trial court concluded that "the Weatherford police had reasonable suspension [sic] to initiate a stop of the vehicle driven by [Appellant] on June 22, 2008." Appellant pleaded guilty, and the trial court sentenced him to sixty days' confinement with a $600 fine.

## III. Factual Background

Lennon Valentine, a bartender at Logan's Roadhouse in Weatherford, Texas, testified at the suppression hearing that Appellant was a patron in the bar area at Logan's on June 22, 2008. Valentine said Appellant was sitting at the bar when Appellant's brother-in-law walked in, saw Appellant at the bar, and told Appellant that he should be at home with his family. Appellant and his brother-in-law became upset and loud; they yelled at one another from ten to twelve feet apart with other patrons between them at the bar. Valentine testified the disturbance was significant

2

enough to disrupt restaurant business. Valentine calmed the men down to an extent but closed the restaurant bar early because of the disturbance. Valentine said the men then left the bar and walked to the parking lot where they continued their argument. Valentine, believing Appellant to be "too intoxicated to drive," called the Weatherford Police Department to report the "intoxicated guest." Valentine went to the parking lot and offered to call a taxi for Appellant, and Appellant's brother-in-law offered to drive Appellant home. Appellant refused both offers. He then got into a van and drove out of the parking lot.

Just as Appellant left the parking lot, Sergeant Bobby Laine, a Weatherford police officer, pulled into the parking lot in response to a dispatch of "a disturbance, possible intoxicated person" and saw three as-of-yet unidentified people walking toward him. One of the three people, wearing a Logan's employee shirt and later identified to Sergeant Laine as Valentine, pointed in the direction of Appellant's van and, according to Sergeant Laine, told the officer that "it was one of the subjects involved in the disturbance."[3] Sergeant Laine turned his patrol car around in the parking lot, followed Appellant, and initiated a traffic stop to identify whether Appellant was the person involved in the disturbance. Sergeant Laine testified that as he followed Appellant with his emergency lights on, Appellant did not immediately

---

[3] Valentine testified that he did not tell the officer that the van contained the person involved in the disturbance. Valentine testified that he told Sergeant Laine "that was the guy we called about" and that it "was the person that we asked [if] we could call a cab for and he refused it."

3

stop, drove at a very slow rate of speed, and made a right-hand turn from Adams onto Texas Drive. As Appellant turned onto Texas Drive, Sergeant Laine had his spotlight on, and Appellant stopped at a dead-end barricade on Texas Drive. Sergeant Laine also testified that he did not have a warrant, that he did not observe Appellant commit any traffic violations, and that he did not see Appellant operate the van in a dangerous manner before he initiated the stop of Appellant's van.

## IV. Analysis

Appellant contends in his sole issue that the trial court erred by denying his motion to suppress because there was no reasonable suspicion or probable cause for Sergeant Laine to stop his vehicle.

## A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

4

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007); *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id*. at 818. We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

## B. Applicable Law

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App. 2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221

5

S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id*. at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). An officer conducts a lawful temporary detention when he or she has reasonable suspicion to believe that an individual is violating the law. *Ford*, 158 S.W.3d at 492. Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Id*. at 492. This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Id*.

## C. Discussion

### 1. Reasonable Suspicion

An officer may rely on information received from a citizen, rather than his direct observation, so long as the citizen's statement is reasonably corroborated by

other matters within the officer's knowledge.  *Brother v. State*, 166 S.W.3d 255, 258–59 (Tex. Crim. App. 2005), *cert. denied*, 546 U.S. 1150 (2006); *State v. Sailo*, 910 S.W.2d 184, 188–89 (Tex. App.—Fort Worth 1995, pet. ref'd) (citing *Illinois v. Gates*, 462 U.S. 213, 242, 103 S. Ct. 2317, 2334 (1983)).  Corroboration means that the officer confirms enough facts to conclude reasonably, in light of the circumstances, that the information provided is reliable and a detention is justified. *Brother*, 166 S.W.3d at 259 n.5; *Sailo*, 910 S.W.2d at 189.  Where the reliability of information is increased, less corroboration is necessary.  *Pipkin v. State*, 114 S.W.3d 649, 654 (Tex. App.—Fort Worth 2003, no pet.); *State v. Stolte*, 991 S.W.2d 336, 341 (Tex. App.—Fort Worth 1999, no pet.).  A citizen's tip deserves great weight when there is a detailed description of the wrongdoing along with a statement that the event was witnessed firsthand, when a citizen puts himself in a position to be held accountable for his intervention, or when the citizen is not connected with the police or a paid informant.  *Pipkin*, 114 S.W.3d at 655; *Stolte*, 991 S.W.2d at 341.

In *Glover v. State*, we held that an officer had reasonable suspicion to validate an investigative *Terry* stop based on a tip from an identifiable EMS technician.  870 S.W.2d 198, 200 (Tex. App.—Fort Worth 1994, pet. ref'd).  There, the officer learned from a police broadcast that a medical technician in an ambulance had reported a DWI suspect driving a Corvette, license number FSP-89X, traveling in the officer's direction.  *Id.* at 199.  The officer spotted a white Corvette being followed by an

7

ambulance, gave chase, and pulled over the driver of the Corvette. *Id.* The ambulance continued on. *Id.* At the suppression hearing, the officer testified that he did not see the appellant driving erratically and stopped him only on the basis of the police broadcast. *Id.* On appeal, we held that the officer had reasonable suspicion for the stop, noting that because the officer could be confident of learning the identity of the medical technician and because the medical technician could reasonably anticipate that his identity would be available to the police, this tip had sufficient indicia of reliability. *Id*. at 200. As a result, under the totality of the circumstances, the information the officer received from the broadcast was reliable and established reasonable suspicion to detain the appellant. *Id.*; *see also Ste-Marie v. State*, 32 S.W.3d 446, 449 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (holding officer had reasonable suspicion to detain the appellant to investigate breach of the peace when witness informed officer the appellant had yelled a profanity at her ten-year-old daughter); *Lesco v. State*, No. 01-98-01168-CR, 1999 WL 343425, at *1 (Tex. App.—Houston [1st Dist.] May 27, 1999, no pet.) (not designated for publication) (holding officers had reasonable suspicion to detain the appellant when coffee shop patron reported two white males fighting with customers inside coffee shop and officers saw two white males leaving coffee shop parking lot as the officers arrived).

Here, Sergeant Laine initiated an investigative detention of Appellant after he received a dispatch of a disturbance involving a possibly intoxicated person. He

8

arrived at the Logan's restaurant where an identifiable but not-yet-identified witness wearing a Logan's employee shirt pointed to Appellant's van and indicated it was being driven by a person involved in the disturbance.[4] Sergeant Laine testified that he stopped Appellant "to identify the person to see if [he was] involved" in the disturbance.

A person commits the crime of disorderly conduct if he "makes unreasonable noise in a public place" or "fights with another in a public place." Tex. Penal Code Ann. § 42.01(a)(5), (6) (Vernon 2003). The information available to Sergeant Laine at the time he stopped Appellant's van established reasonable suspicion to stop Appellant to investigate the possible disorderly conduct offense. *See Glover*, 870 S.W.2d at 200; Tex. Penal Code Ann. § 42.01(a)(5), (6); *see also Ste-Marie*, 32 S.W.3d at 449 (finding reasonable suspicion to detain to investigate breach of the peace); *Lesco*, 1999 WL 343425, at *1 (finding reasonable suspicion to detain to investigate coffee shop altercation). The tip from Valentine deserves greater weight because Valentine put himself in a position to be easily identified and held accountable for his intervention. *See Mitchell v. State*, 187 S.W.3d 113, 117 (Tex. App.—Waco 2006, pet. ref'd); *Pipkin*, 114 S.W.3d at 655; *State v. Garcia*, 25 S.W.3d 908, 913 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Sergeant Laine could

---

[4] To the extent there is a conflict between the testimony by Sergeant Laine and Valentine concerning the information given to Sergeant Laine by Valentine, we defer to the trial court's resolution of that conflict because the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

have been confident of subsequently learning Valentine's identity because Valentine was a Logan's employee. Further, Sergeant Laine did learn Valentine's identity when he returned to the restaurant and interviewed him. Thus, the information from Valentine was sufficiently reliable to support the trial court's reasonable suspicion finding. *See Glover*, 870 S.W.2d at 200.

"The issue before us is one of reasonable suspicion, not whether [A]ppellant is guilty of disorderly conduct." *Ste-Marie*, 32 S.W.3d at 449. Viewing the evidence in the light most favorable to the trial court's ruling, we hold that, under the totality of the circumstances, the information known to Sergeant Laine at the time he stopped Appellant provided sufficient, articulable facts on which he could have reasonably believed Appellant had engaged in disorderly conduct. *See id.*; *Glover*, 870 S.W.2d at 200. We hold that Sergeant Laine's investigative detention of Appellant was not illegal and that the trial court did not err by overruling Appellant's motion to suppress. We overrule this portion of Appellant's sole issue.

### 2. Probable Cause

Although the substance of Appellant's brief challenges only reasonable suspicion, Appellant's statement of his "Issue Presented" arguably includes a challenge to both reasonable suspicion and probable cause. To the extent Appellant contends there was no probable cause to justify his detention, we overrule that portion of his sole issue. Probable cause was not required in this case because reasonable suspicion alone justified the investigative detention. *See Terry*, 392 U.S.

10

at 22, 88 S. Ct. at 1880; *Carmouche*, 10 S.W.3d at 328. Because we hold that Officer Laine had reasonable suspicion to stop Appellant's vehicle, we need not address whether he also had probable cause. *See* Tex. R. App. P. 47.1 (requiring appellate court to address "every issue raised and necessary to final disposition of the appeal"). We therefore overrule the remainder of Appellant's sole issue.

## V. Conclusion

Having overruled Appellant's sole issue, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL: LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 20, 2010